NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2133
_____

DOMINICK DESIMONE,
Appellant

v.

U.S. CLAIMS SERVICES INC.; PAUL HASHIM
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-6150)
District Judge:  Hon. Gerald J. Pappert
_____

Submitted Under Third Circuit LAR 34.1(a)
April 16, 2021

Before:  CHAGARES, JORDAN, and SCIRICA, *Circuit Judges.*

(Filed April 28, 2021)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Dominick DeSimone appeals the District Court's order granting a motion by U.S. Claims Services Inc. and Paul Hashim (collectively, "U.S. Claims Services") to dismiss this case for failure to state a claim. For the reasons that follow, we will affirm the dismissal.

## I.  BACKGROUND

U.S. Claims Services operates a business dedicated to advising property owners of unclaimed property that would otherwise escheat to the state. Utilizing states' public treasury records, U.S. Claims Services identifies such property and then locates its owner using tools such as Intelius People Search or LexisNexis Public Records. The company then contacts the property owners, informs them of their unclaimed property, and provides a form to complete to authorize U.S. Claims Services to aid in the recovery process.

For abandoned property located in the state of Pennsylvania, the form is a standard contract, the contents of which are mandated by statute and authorized by the state's Department of Treasury. 72 PA. STAT. AND CONS. STAT. ANN. § 1301.11(g). That form, if signed, authorizes U.S. Claims Services[1] "to communicate on [the property owner's behalf] and provide assistance during the recovery process." (J.A. at 56.) And, in accordance with Pennsylvania law, the property owner then agrees to pay U.S. Claims

---

[1] While the form more specifically authorizes Payne Richards & Associates to communicate on DeSimone's behalf, it is undisputed that U.S. Claims Services was doing business as Payne Richards & Associates in Pennsylvania.

Services "a fee of 15% of the amount recovered" in exchange for its services – which "includ[e] but [are] not limited to, ordering/providing proper forms, answering any questions and follow up with claim status." (J.A. at 56.) *See* 72 PA. STAT. AND CONS. STAT. ANN. § 1301.11(g)(2) ("All agreements … to recover or collect abandoned and unclaimed property … shall be valid and enforceable only if the agreements … clearly state the fee or compensation to be paid, which shall not exceed fifteen per centum of the value of the abandoned and unclaimed property[.]"). The form does not, however, disclose to property owners that they can, on their own, "recover their unclaimed monies without any fees" or that the company's "services are unnecessary" – though there is no statutory requirement that the form provide such statements. (J.A. at 36, ¶ 11.) *See* 72 PA. STAT. AND CONS. STAT. ANN. § 1301.11(g) (listing requirements for agreement to be valid and enforceable).

In May 2018 and again in April 2019, U.S. Claims Services contacted DeSimone, informing him that he had $841.97 and $469.10, respectively, in unclaimed wages. In accordance with Pennsylvania's escheat laws, *see* 72 PA. STAT. AND CONS. STAT. ANN. § 1301.11(g), U.S. Claims Services disclosed the unclaimed property type, amount, and identification number; DeSimone's full name and reported address; and the identity of the property holder (i.e., the company that reported his unclaimed property). In short, it provided the identifying information DeSimone would need to recover the unclaimed property. Both times, U.S. Claims Services sent him the form that, if signed, authorized it to receive 15 percent of any recovery in exchange for assisting DeSimone with the recovery process. And both times, DeSimone signed, had notarized, and returned the

3

forms to U.S. Claims Services. The company then submitted DeSimone's claims to the Pennsylvania Treasury – which sent DeSimone the full amount of his unclaimed wages. Once he successfully recovered his wages, U.S. Claims Services sent him invoices for its services. DeSimone paid the first invoice, but, instead of paying the second invoice, he filed this suit.

According to his Complaint, DeSimone learned that U.S. Claims Services's business "was a scam, and that he could have received his money directly from the state for free." (J.A. at 42, ¶ 51.) He claims he was never aware that he could have obtained his unclaimed property without the help of U.S. Claims Services, and, had he known that, "he certainly would have" recovered his money on his own. (J.A. at 42, ¶ 52.) "[U]pset that he had been deceived and was being charged for something he could have- and would have- done himself for free[,]" DeSimone brought suit on behalf of himself and similarly-situated Pennsylvanians against U.S. Claims Services and its sole director and executive, Hashim, for violating Pennsylvania's Unfair Trade Practices Consumer Protection Law ("UTPCPL") and for committing fraud. (J.A. at 43, ¶ 53.) Specifically, DeSimone brings UTPCPL claims for Deceptive Conduct, 73 PA. STAT. AND CONS. STAT. ANN. § 201-2(4)(xxi); Knowing Misrepresentation, *id.* § 201-2(4)(xv); and Fraudulent Misrepresentation, *id.* § 201-2(4)(i), (ii), (v), (ix), (xxi).

4

## II. DISCUSSION[2]

DeSimone contends that the UTPCPL required U.S. Claims Services to notify him that its services were unnecessary "because allegedly the absence of this notification is misleading or confusing" to the property owner. *Commw. v. Monumental Props., Inc.*, 329 A.2d 812, 829 (Pa. 1974). We do not agree.

According to DeSimone, U.S. Claims Services gave him "the impression … that [its] services [were] the only way to recover property." (Reply Br. at 5.) But that allegation represents nothing more than a conclusory statement, unsupported by the forms U.S. Claims Services provided to DeSimone. *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) (citations omitted) ("At the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."). Indeed, those forms disclose all the information DeSimone would need to recover the property himself and further inform him of the services it provides in exchange for the fee, none of which indicate or even suggest that DeSimone could not otherwise recover his property or that U.S. Claims Services's assistance was necessary. In addition, the forms include an exclusivity provision, stating that DeSimone "agrees to work exclusively with [U.S. Claims Services] to recover [his] assets[.]" (J.A. at 56.) That provision suggests that DeSimone had other

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(d). We have jurisdiction under 28 U.S.C. § 1291. "We review *de novo* a district court's dismissal under Rule 12(b)(6) for failure to state a claim on which relief may be granted." *Fischbein v. Olson Research Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020) (citation omitted).

5

avenues to recover his property and, therefore, would be rendered superfluous were we to accept DeSimone's contention. *Cf. Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 167 (3d Cir. 2011) ("[T]his Court takes care not to render other portions of a provision or contract superfluous when construing contract language." (alteration in original) (citations omitted)). Thus, while Pennsylvania law requires "affirmative disclosures by a seller to prevent misrepresentation and deception" in certain circumstances, this is not one of those circumstances. *Monumental Props.*, 329 A.2d at 829 (citation omitted).

Moreover, even if we were to presume that an affirmative disclosure was necessary, DeSimone does not and cannot allege justifiable reliance on U.S. Claims Services's allegedly deceptive nondisclosure. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221-22, 224-26 (3d Cir. 2008) (concluding that Pennsylvania requires justifiable reliance for all UTPCPL claims, including the catch-all provision). Although he claims that he had no knowledge that he could recover his money on his own without using U.S. Claims Services, and that "he certainly would have" done so had he known, we "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Id.* at 227 (citation omitted).

We are hard-pressed to understand how DeSimone could justifiably rely on his presumption that he could not claim his own property unless he paid another company to do it for him, especially when the company itself made no affirmative misrepresentations. He asks us to treat his unreasonable presumption as being the same as a deceptive concealment of information. But he had at least constructive notice of the allegedly concealed information pursuant to the UTPCPL's statutory notice requirements. *See* 72

6

PA. STAT. AND CONS. STAT. ANN. §§ 1301.10a (requiring the holder of abandoned property to send notice to the owner), 1301.12 (requiring the State Treasurer to publish notice "in the county in which the owner of the property had a last known address … or, if there is no name or address or the owner is not a Pennsylvania resident, then at least one time in the Pennsylvania Bulletin"; requiring notice "also be posted on the Internet website of the Treasury Department"; requiring the State Treasurer to mail a notice for property valued at $250 or more).[3] Ultimately, his arguments are without merit.

## III.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's dismissal.

---

[3] Absent any misrepresentation or concealed information, and with only conclusory allegations of reliance, Desimone similarly cannot state a claim under Texas's Deceptive Trade Practices-Consumer Protection Act.  See TEX. BUS. & COM. CODE ANN. §§ 17.56(b)(24), 17.50.